UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SARA ELIZABETH BENZO,

                        Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.

_____

18-CV-991-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 16).

Plaintiff Sara Elizabeth Benzo brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Benzo's motion (Dkt. No. 9) is denied, the Commissioner's motion (Dkt. No. 14) is granted, and this case is dismissed.

## BACKGROUND

On May 7, 2015, Benzo filed protectively applications for DIB and SSI, alleging disability as of December 23, 2013, due to number of impairments, including a cerebral accident, stroke, brain aneurysm and depression. (Tr. 189).[1]  Her applications were denied on September 23, 2015.  (Tr. 16, 81-107).  On October 26, 2015, Benzo requested

---

[1]    References to "Tr." are to the administrative record in this case.

a hearing before an administrative law judge ("ALJ").  A video hearing was held before ALJ John R. Allen on October 25, 2017.  Benzo appeared from Buffalo, New York, along with her non-attorney representative. The ALJ appeared from Falls Church, Virginia. A vocational expert appeared by telephone.  On November 7, 2017, the ALJ issued a decision finding Benzo not disabled. (Tr. 28). That decision became final when on July 16, 2018, the Appeals Council denied her request for review.  (Tr. 1-5).  This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve."  *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence.  Further, the Commissioner's factual conclusions must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective

medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements

of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e).   RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1).   The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll,* 705 F.2d at 642.

III.    *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that Benzo had not engaged in substantial gainful activity since December 23, 2013, her alleged onset date. (Tr. 18). At step two, the ALJ concluded that Benzo has the following severe impairments: Arteriovenous Malformation ("AVM") with surgical correction and encephalomalacia in right frontal lobe. (Tr. 18-19). At step three, the ALJ found that Benzo does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19). Before proceeding to step four, the ALJ assessed Benzo's RFC, in pertinent part, as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant can frequently perform fingering and handling with her left upper extremity. She can perform simple, repetitive tasks.

(Tr. 21). Proceeding to step four, the ALJ found that Benzo is capable of performing past relevant work as a Stock Clerk, Cafeteria Attendant and Fast Food Worker. (Tr. 26). At step five, the ALJ found alternatively that, considering Benzo's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she is able to perform, namely, Mail Clerk, Marker and Garment Sorter. (Tr. 27-28). Accordingly, the ALJ concluded that Benzo is not disabled under the Act. (Tr. 28).

IV.   *Benzo's Challenges*

Benzo makes two arguments as to why the Court should find that the ALJ's decision is not supported by substantial evidence.  First, she argues that the ALJ failed to provide good reasons for giving little weight to the medical opinions of her treating physician, Dr. Mary A. Kelly, M.D.  Second, she argues that the ALJ's RFC finding did not properly account for her postpartum depression and her complaints of lower back, neck, and shoulder pain.  The Court finds these arguments without merit.

In finding that Benzo was not disabled, the ALJ determined that she could perform light work, but she could only frequently perform fingering or handling with her left upper extremity. (Tr. 21).  Further, he found that she could perform simple, repetitive tasks. (Tr. 21).  The Court finds that substantial evidence supports these RFC findings.

It is within the ALJ's discretion to resolve genuine conflicts in the evidence.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  In so doing, the ALJ may "choose between properly submitted medical opinions," which the ALJ did in the instant case.  See *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record.  See *Veino*, 312 F.3d at 588; *Barry v. Colvin*, 606 F. App'x 621, 623-24 (2d Cir. 2015) (ALJ not bound to accept all portions of consultative examiner's report).  An ALJ's decision to discount a claimant's credibility often influences the ALJ's weighing of medical opinions that were based at least in part on the claimant's self-reported symptoms, and the ALJ's evaluation of the medical opinions in turn informs whether medical evidence supports the ALJ's RFC determination.  *Julin v. Colvin*, 826

F.3d 1082, 1086 (8th Cir. 2016).  Here, the ALJ weighed all of the medical opinions in formulating the RFC finding. (Tr. 21-26).

The ALJ gave the opinion of consultative examiner Dr. John Schwab, D.O. great weight, and gave partial weight to the opinion of consultative examiner Dr. Susan Santarpia., Ph.D.  (Tr. 484).  An ALJ may properly rely on the opinion of a consultative examiner.  See *Camille v. Colvin*, 652 F. App'x 25, 27 n.2 (2d Cir. 2016); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

On August 25, 2015, Benzo attended a consultative internal medicine examination with Dr. Schwab. (Tr. 486-89).  On examination, she appeared in no acute distress with a normal gait. (Tr. 487).  Benzo had difficulty walking on her toes but could walk on heels. (Tr. 487).  She stopped her squat halfway down due to left leg pain. (Tr. 487).  Her stance was normal, and she used no assistive devices. (Tr. 487).  She needed no help changing for the exam or getting on and off the exam table. (Tr. 487). She could rise form a chair without difficulty. (Tr. 487).  Her musculoskeletal examination showed the cervical spine with full flexion, extension, and lateral flexion and full rotary movement. (Tr. 487).  There was no scoliosis, kyphosis, or abnormality in the thoracic spine. (Tr. 487).  The lumbar spine exam was contraindicated, likely because Benzo was six months pregnant. (Tr. 487).  She showed full range of motion ("ROM") in the shoulders, elbows, forearms, wrists, hips, knees, and ankles. (Tr. 488).  Her joints were stable and nontender. (Tr. 488).  On her neurologic exam, no sensory deficit was noted, and she showed full strength at 5/5 in

the upper and lower extremities. (Tr. 488).  There was no muscle atrophy evident. (Tr. 488).

Dr. Schwab diagnosed decreased strength in the left hand with history of cardiovascular accident during brain surgery for AVM repair; six months pregnant; and Asthma. (Tr. 488).  Dr. Schwab thought Benzo was mildly restricted in performing prolonged fine motor activity using the left hand. (Tr. 488).  Giving this opinion great weight, the ALJ explained that Dr. Schwab's opinion was consistent with his examination findings that were generally within normal limits, except for reduced grip strength 0f the left hand .(Tr. 25).  It was also consistent with his diagnosis of decreased strength of the left hand with a history of cardiovascular accident during brain surgery. (Tr. 25).

Next, the ALJ gave the opinions of Dr. Santarpia partial weight. (Tr. 25). Examination findings were relatively normal. (Tr.25, 482-83).  Dr. Santarpia diagnosed adjustment disorder with anxiety and opined that Benzo could understand and follow simple directions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress all within normal limits. (Tr. 483).  Giving this opinion partial weight, the ALJ explained that Dr. Santapia's opinion was consistent with her examination finding, all within normal limits and with her diagnosis of adjustment disorder with anxiety. (Tr. 25).  However, the ALJ noted that Dr. Santarpia only saw Benzo one time and that her depression was consistent enough to warrant additional limitations. (Tr. 25).

In contrast, the ALJ gave the opinions of Benzo's treating physician, Dr. Kelly, only little weight.  Benzo argues the ALJ failed to provide good reasons for rejecting Dr. Kelly's opinions.  The Court disagrees.

If an ALJ decides that the opinion of a treating physician is not entitled to controlling weight, he or she must determine how much weight, if any, to give it.  In doing so, the ALJ must "explicitly consider" the following factors:  "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion;  (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (*per curiam*) (internal quotations and citations omitted).  The ALJ must give "good reasons" for the weight given to the treating physician's opinion. *Id*. at 96 (internal quotations and citations omitted).  An ALJ's failure to "explicitly" apply these factors is a procedural error, and such error is not harmless, unless "a searching review of the record" shows that the substance of the treating physician rule was not traversed[.]" *Id.* (internal quotations and citations omitted).

Here, the ALJ explicitly discussed these factors when discounting Dr. Kelly's opinion. (Tr. 25-26*).*  The ALJ acknowledged Dr. Kelly's "longitudinal treatment history" (Tr. 26).  He addressed the evidence cited by Dr. Kelly in her opinion, and the consistency of the opinion with other evidence in the record. (Tr. 25-26).  Moreover, the ALJ discussed that the mental limitations were outside Dr. Kelly's area of medical expertise as she was a primary care physician. (Tr. 26).

In giving Dr. Kelly's August 2016 opinion little weight, the ALJ noted that Dr. Kelly opined that Benzo's impairments from the stroke she experienced during surgery were permanent. (Tr. 25, 493). However, this was inconsistent with the statement of Benzo's treating neurosurgeon, Dr. Adnan Siddiqui, M.D., who indicated that she was released from all activity restrictions in January 2015. (Tr. 25). The treating neurosurgeon also stated that Benzo continued to do well post-surgery and did not need to take Adderall from a neurosurgical perspective. (Tr. 359). By March 2017, Benzo's neurosurgeon indicated that her MRI looked "excellent." (Tr. 514).

Dr. Kelly further opined that Benzo experienced disabling headaches three times a week, yet her treatment note from August 2016 indicates that Benzo said she had two to three headaches in the past two weeks, and there was no indication that the headaches were disabling. (Tr. 529-30). The ALJ also noted that: (1) Dr. Kelly indicated only moderate restrictions; and (2) her note that Benzo was precluded from any consistent function was inconsistent with the fact that Benzo took care of several infant children. (Tr. 26).

Moreover, the ALJ explained that although Dr. Kelly stated that Benzo had no capacity for work due to her psychological and neurological impairments, that Benzo did not handle stress well since her cerebrovascular accident, and that Benzo's lumbar and knee problems required opiate use (Tr. 26, 535), Dr. Kelly did not give specific functional capacities or limitations in her opinion. (Tr. 25).

The ALJ concluded that both of Dr. Kelly's opinions were contradicted by Benzo's own treating neurosurgeon and the two consultative examiners. (Tr. 26). The ALJ also noted that Dr. Kelly's opinions were contradicted by her own office notes, showing that

Benzo's most recent examination was within normal limits and her only active diagnoses were headaches and fatigue. (Tr. 26, 529-30).  The ALJ further noted that before Dr. Kelly's August 2016 opinion, Dr. Kelly treatment notes showed moderate findings with cervical tenderness, slightly weaker grip on the left, radiation of pain to the upper left arm and tenderness to palpitation at the left arm and shoulder. (Tr. 26, 525).  She was tender but exhibited full range of motion ("ROM") and at that appointment, denied any specific symptoms of depression. (Tr. 26, 525-26).

In sum, the Court finds that the ALJ provided "good reasons" for discounting the opinions of the treating physician, Dr. Kelly.  (Tr. 25-26).  See *Nocera v. Saul*, No. 18-5080, 2019 WL 3282942, at *7 (S.D.N.Y. July 22, 2019) (discussing *Estrella* and finding that the "ALJ provided good reasons for disregarding the extreme findings in [the doctor's] 'check off' evaluation of Plaintiff's mental functional capacity").

With regard to Benzo's claims related to postpartum depression, as well as knee, back and shoulder pain, Benzo argues that the opinions of the consultative examiners, rendered in 2015, were stale because she made these complaints subsequent to those opinions.  She contends therefore that the ALJ should not have relied on them.  The Court finds this argument unpersuasive.

A medical opinion is not stale simply because time has passed since it was issued. See *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").  Here, the consultative medical opinion issued about two years prior to

the ALJ's decision were not stale because there was no evidence that the Benzo's condition had significantly deteriorated after those opinions were issued and they were consistent with the record as a whole. See *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017). Further, in addition to relying on the opinions of the consultative examiners, the ALJ noted that at the time Benzo complained of the postpartum depression, at her examination by Dr. Kelly in January 2016, the psychological portion of the examination was again within normal limits. (Tr. 24, 26). Finally, the ALJ accounted for postpartum depression in his RFC finding, explaining that he limited Benzo to simple, repetitive tasks consistent with unskilled work. (Tr. 26).

Benzo also fails to show that her lower back, neck, and shoulder pain were inconsistent with the ability to perform light work. In fact, at a July 12, 2017 appointment at an orthopedic clinic for neck and low back pain, examination findings were relatively normal. (Tr. 536). On examination, Benzo walked with a smooth and reciprocal gait. (Tr. 537). There was no tenderness of the paraspinal muscles and no spasm of the paravertebral muscles. (Tr. 537). She showed full ROM in the neck. (Tr. 537). She showed near full strength in the shoulders, wrists, fingers, hips, and knees. (Tr. 538). X-rays of the cervical spine showed normal alignment and unremarkable disc spaces. (Tr. 538). Her lumbar spine x-ray showed facet arthropathy and degenerative disc disease. (Tr. 539). The physician's assistant wanted Plaintiff to get an MRI and to continue with physical therapy. (Tr. 539).

In sum, in this case, the ALJ weighed the medical evidence, including treatment notes, objective findings, medical opinions, and Benzo's testimony to reach an RFC determination that reflected his analysis of the credible evidence of record. (Tr. 21-26).

The ALJ acted within his discretion when he afforded different degrees of weight to the medical opinions and medical evidence in the record.  See *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   An ALJ considers medical opinions as to a claimant's level of functioning, but he or she must ultimately reach an RFC assessment based on the record as a whole.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").   Despite Benzo's assertions to the contrary, the Court finds that there is substantial evidence to support the ALJ's RFC finding.

## CONCLUSION

For the reasons stated, Benzo's motion for judgment on the pleadings (Dkt. No. 9) is denied, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted, and this case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 8, 2020
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge